IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie Allen Achter,<br><br>        Petitioner,<br><br>vs.<br><br>Craig Apker, Warden,<br><br>        Respondent. | No. CV 11-512-TUC-RCC (HCE)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is Petitioner's Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2241 (Doc. 11). Respondent has filed a Return and Answer (Doc. 21) (hereinafter "Answer"). Petitioner has filed a document (Doc. 22) which the Court construes as a Reply.

Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court deny and dismiss the Amended Petition.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

Petitioner is an inmate currently incarcerated at the United States Penitentiary in Tucson, Arizona. (Answer, p.1 & Exh. 1, Att. 1; Amended Petition, p.1). Petitioner is serving a 262-month sentence followed by three years of supervised release for conviction in the Eastern District of Missouri of Felon in Possession of a Firearm in violation of 18 U.S.C. §§922(g) and 924(e). (Answer, pp. 1-2 & Exh. 1, Att. 2). Petitioner is projected to complete his sentence on February 26, 2013, via good conduct time release, provided that Petitioner earns all available good conduct time. (*Id.*).

Petitioner raises the following three claims for relief in his Amended Petition:

1. Federal law and Bureau of Prisons (hereinafter "BOP") policy under the Second Chance Act entitle him to consideration for transfer to a halfway house or house arrest for at least one year, but he was informed that he would not be considered for such release until August 2012, six months before his projected release date (Ground I);

2. Missouri law entitles him to a full year at a half way house or under house arrest (Ground II); and

3. Pursuant to a settlement agreement reached after Petitioner was injured at a federal prison, he is entitled to thirteen months in a halfway house or under house arrest (Ground III).

(Amended Petition, pp. 4-6).

Respondent contends that this action should be dismissed because Petitioner failed to exhaust administrative remedies. Alternatively, Respondent argues that this Court lacks jurisdiction to consider Petitioner's Ground I and that the BOP properly exercised its discretion in determining Petitioner's Residential Reentry Center[1] placement. (Answer, pp. 2-6). Respondent also asserts that Missouri law does not apply to Petitioner's federal sentence and there is no substantiation for Petitioner's claim regarding a settlement agreement entitling him to earlier placement at a residential reentry center (hereinafter "RRC") or house arrest. (*Id.* at pp. 6-7).

## II. DISCUSSION

### A. Jurisdiction

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,'...and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir.2000) *(quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other grounds by City*

---

[1] "The BOP contracts with residential reentry centers (RRCs), also known as halfway houses, to provide assistance to inmates who are nearing release." *See* BOP website: http://www.bop.gov/locations/cc/index.jsp.

*of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774 (2004)).  With regard to habeas petitions, federal jurisdiction is dependent upon a proper characterization of the petition. *Gay v. Winn,* 2009 WL 275324, *2 (D.Ariz. Feb. 5, 2009).

        Generally, an action to contest the legality of a sentence must be filed pursuant to 28 U.S.C. §2255, whereas an action to challenge the execution of a sentence must be filed pursuant to 28 U.S.C. § 2241.  *Hernandez,* 204 F.3d at 864.  Petitioner does not claim that the sentencing court imposed an illegal sentence.  Instead, he challenges the manner, location, or condition of the execution of his sentence. *See e.g. Rodriguez v. Smith,* 541 F.3d 1180 (9th Cir. 2008) (affirming district court's grant of habeas relief under 28 U.S.C. § 2241 where petitioner sought to compel BOP to immediately consider his transfer to a RRC pursuant to the Second Chance Act); *Levine v. Apker,* 455 F.3d 71, 77-78 (2d Cir. 2006) (habeas petition filed under 28 U.S.C. § 2241 is the proper vehicle to challenge BOP policy regarding petitioner's placement at federal prison instead of a community correctional facility because petitioner is challenging "the *place* of his imprisonment, including the differences in the *manner and conditions* of imprisonment (such as the degree of physical restriction and rules governing prisoners' activities) that distinguish C[ommunity] C[orrectional] C[enters] from other BOP facilities.") (emphasis in original).  Accordingly, Petitioner's claim is properly filed pursuant to section 2241.

        With regard to Petitioner's reliance on the Second Chance Act in Ground I of the Amended Petition, Respondent points out that not all claims regarding the Second Chance Act are within the Court's jurisdiction. (Answer, p. 5).  Respondent is correct that the Ninth Circuit has held "that federal courts lack jurisdiction to review the BOP's individualized [residential reentry] determinations made pursuant to 18 U.S.C. §3621." *Reeb v. Thomas,* 636 F.3d 1224, 1228 (9th Cir. 2011).  However, the Ninth Circuit has "clarified that...'judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution or exceeds its statutory authority....'" *Close v. Thomas,* 653 F.3d 970, 973-974 (9th Cir. 2011) (*quoting Reeb,* 636 F.3d at 1228)). Petitioner claims that BOP acted in contravention of the requirements of "Federal law and BOP Policy"

(Ground I) (Amended Petition, p. 4), and BOP acted unconstitutionally. (Grounds II and III). Petitioner's claims, on their face, support federal jurisdiction in this instance. *See Close,* 653 F.3d at 973-974. Further, because Petitioner is incarcerated at the Federal penitentiary in Tucson, Arizona, this Court has jurisdiction over this matter. *Francis v. Rison,* 894 F.2d 353 (9th Cir. 1990).

### B.     Exhaustion

Federal prisoners are generally required to exhaust available administrative remedies before filing a habeas corpus petition pursuant to 28 U.S.C. §2241. *See Tucker v. Carlson,* 925 F.2d 330, 332 (9th Cir. 1991); *Martinez v. Roberts,* 804 F.2d 570, 571 (9th Cir. 1986). The failure to satisfy the exhaustion requirement applicable to section 2241 proceedings is not jurisdictional. *Brown v. Rison,* 895 F.2d 533, 535 (9th Cir. 1990) *overruled on other grounds by Reno v. Koray,* 515 U.S. 50, 54-55 (1995). Thus, where a federal prisoner fails to properly exhaust administrative remedies prior to filing a section 2241 petition, "the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Id.* The district court may exercise its discretion to excuse the exhaustion requirement if the administrative remedy is inadequate, ineffective, or if attempting to exhaust would be futile or cause irreparable injury. *Fraley v. United States Bureau of Prisons,* 1 F.3d 924, 925 (9th Cir. 1993); *United Farm Workers of America v. Arizona Agr. Emp't. Relations Bd.,* 669 F.2d 1249, 1253 (9th Cir. 1983). Factors weighing in favor of requiring exhaustion include whether: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct is own mistakes and to preclude the need for judicial review. *Noreiga-Lopez v. Ashcroft,* 335 F.3d 874, 880-81 (9th Cir. 2003) (*citing Montes v. Thornburgh,* 919 F.2d 531, 537 (9th Cir. 1990)). *See also Ruviwat v. Smith,* 701 F.2d 844, 845 (9th Cir. 1983) (recognizing that requiring exhaustion of administrative remedies "will aid judicial review by allowing the appropriate development of a factual record in an expert

1  forum; conserve the court's time because of the possibility that the relief applied for may be
2  granted at the administrative level; and allow the administrative agency an opportunity to
3  correct errors occurring in the course of administrative proceedings.").

4        The BOP has established an Administrative Remedy Program which requires the
5  prisoner to proceed through a four-tier review process comprised of: (1) an informal
6  resolution process with institutional staff, *see* 28 C.F.R. §542.13; (2) a formal written
7  Administrative Remedy Request to the warden, *see* 28 C.F.R. §542.14; (3) an appeal to the
8  BOP Regional Director, *see* 28 C.F.R. §542.15; and (4) an appeal to the BOP General
9  Counsel, *see id.* ("Appeal to the General Counsel is the final administrative appeal.").
10 Additionally, formal administrative remedy requests regarding initial decisions that did not
11 originate with the Warden, or his/her staff, may be initially filed with the Bureau office
12 which made the original decision, and appealed directly to the General Counsel.  28 C.F.R.
13 §542.14(d)(5).  The regulation is clear that "[t]he purpose of the Administrative Remedy
14 Program is to allow an inmate to seek formal review of an issue relating to any aspect of
15 his/her own confinement."  28 C.F.R. §542.10(a).

16       Respondent asserts that "Petitioner filed an administrative remedy regarding RRC
17 placement at USP Coleman on May 3, 2011.  This administrative remedy was rejected the
18 following day because Petitioner did not first attempt to informally resolve this issue..., he
19 did not submit the remedy through his correctional counselor..., and he used more than one
20 continuation page." (Answer, *citing* Exh. 1, Att. 3, at p. 1).  He was given five days to re-file
21 this administrative remedy request.  (*Id.*).  Respondent further asserts that Petitioner did not
22 attempt to correct his error and, instead, filed an administrative remedy request with the
23 Designations and Sentence Computation Center in Grand Prairie, Texas, on November 29,
24 2011. (Answer, p. 3).  The request was "rejected on November 29, 2011 because Petitioner
25 did not file it in the Regional Office in the Region where he was incarcerated... and he did
26 not have a complete administrative remedy set of documents...." (*Id. citing* Exh. 1, Att. 3 at
27 p.2).  Petitioner was granted 15 days in which to correct the errors and re-submit his request.
28

(*See* Answer, Exh. 1, Att. 3 at p.2). The record does not reflect that Petitioner corrected and resubmitted his request.

Petitioner's Reply is difficult to understand. It is written in a rambling fashion and much of it is unintelligible and incomprehensible. With regard to exhaustion, it appears that Petitioner argues that: the issue is moot; the coordinator had "too many continuances..." and was "stalling for time so the B.P.-9 and institutional 'Inmate' 'cite' have exhausted he [sic] administrative remedies..."; and "the warden lied about the 'cite' Inmate Regional addressed [sic] where to appealed [sic] the B.P.-9's so  when the B.P.-9's comed [sic] back the Grand Prairie Texas Regional is–the number one Regional all regional's so the Petitioner appealed to Texas number one Regional. Petitioner exhausted his 'cite' administrative institutional remedies 'cite'...." (Reply pp. 4-5).

Petitioner attached to the Amended Petition a September 26, 2011 Request for Administrative Remedy regarding medical treatment for his right hand. (Amended Petition, Exh. 2 (Doc. 11 at p. 12)). Petitioner also attached an acknowledgment of receipt from the Administrative Remedy Coordinator at Tucson USP. (Amended Petition, Exh. 1 (Doc. 11 at p. 10)). The September 26, 2011 request for administrative remedy with regard to medical treatment is irrelevant to the claims currently before the Court in Petitioner's Amended Petition.[2]

Petitioner also attaches to his Amended Petition a September 29, 2011 Request for Administrative Remedy. (*Id.* (Doc. 11 at p. 11)). The subject of the request is generally incomprehensible, however, Petitioner does mention "transfered [sic] this inmate Leslie Allen Achter...to a 'halfway' house..." and then goes on to mention "criminal negligence..." and "body injury to my health...." (*Id.*). There is no indication how this request was resolved.

---

[2] Petitioner included a medical claim in his Amended Petition at Ground IV, but the Court dismissed that claim. (Doc. 13).

- 6 -

Nothing in the record supports the conclusion that Petitioner exhausted administrative remedies as required. Nor does the record substantiate Petitioner's vague assertions that he was given an incorrect address or that he was lied to on this issue. Instead, the instant record supports Respondent's argument that Petitioner failed to exhaust administrative remedies as required.

The record also reflects that Petitioner's projected release date via good conduct time is February 26, 2013. (*See* Answer, p.2). Under the Second Chance Act, a federal inmate may be placed in a RRC for a "portion of the final months of [the term of imprisonment], []not to exceed 12 months[]...." 18 U.S.C. §3624(c)(1). Thus, Petitioner is correct that, if he prevails in his request for RRC placement for 12 months, such term should begin in February 2012, assuming good time conduct. Moreover, Respondent has submitted pertinent records and argument to support his position that Petitioner's claims are meritless. Upon review of instant record, there is no possibility that the relief applied for may be granted at the administrative level. Nor is there need to provide the administrative agency an opportunity to correct errors in hope of precluding the need for judicial review given that Respondent herein asserts no error was made and as discussed *infra*, Respondent is correct that Petitioner's claims are meritless. Although the Court does not condone Petitioner's bypass of the administrative exhaustion requirements, given the time concerns at issue, the Court will review Petitioner's claims despite Petitioner's failure to exhaust. *See Fraley,* 1 F.3d at 925. *See also Parsons v. Sanders,* 2010 WL 5676523, *1 (D. Ariz. Dec. 20, 2010) (court need not address exhaustion where claim is without merit).

  C. Review of Petitioner's Amended Petition

    1. Ground I

Petitioner asserts that "[f]ederal law and BOP policy, including amendments under the Second Chance Act, entitle me to consideration for at least a year of Halfway House/House Arrest, yet I was not given this required individualized consideration." (Amended Petition, p. 4). According to Petitioner, his full-term release date is February 2013, thus he should be considered for release under the Second Chance Act before February

2012. (*Id.*). Petitioner claims he was informed that he would not be considered for release under the Second Chance Act until August 2012. (*Id.*).

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson,* 503 U.S. 329, 335 (1992) (*citing* 18 U.S.C. §3621(a)). In accordance with the Second Chance Act, which is codified, in part, at 18 U.S.C. § 3624(c), "[t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. §3624(c)(1). *See also Bruce v. Apker,* 2009 WL 2509170, *1 (Aug. 17, 2009 D. Ariz.).  "With respect to home confinement, the same statute states that "'[t]he authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.'". *Bruce,* 2009 WL 2509170, *1 (*quoting* 18 U.S.C. §3624(c)(2)); *see also Sacora v. Thomas,* 628 F.3d 1059, (9th Cir. 2010)(pursuant to 18 U.S.C. §1324, "prisoners may be placed in a RRC or in home confinement."). In making such determinations, the BOP is to utilize five factors set forth in 18 U.S.C. §3621(b) as follows:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same

> matters, direct the transfer of a prisoner from one penal or correctional facility to another.... Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

18 U.S.C. § 3621(b).

The record reflects that on December 11, 2011, well in advance of February 2012, Petitioner's unit review team reviewed Petitioner "for pre-release RRC placement in accordance with the five criteria from the Second Chance Act of 2007." (Answer, Exh. 1, Att. 4). In making its determination, the unit review team stated that:

> The Act provides that each case must be decided on its own merits. The criteria used in this decision include: Resources of the facility; Nature and circumstances of the offense; History and characteristics of the inmate; Court statements related to imprisonment and type of facility; and Sentencing Commission policy. Along with these criteria, the unit team is required to assess the inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly. The inmate may need assistance in obtaining a residence and employment. We believe RRC placement for up to 180 days will provide the appropriate opportunity to successfully reintegrate into the community. Placement beyond this period would detract from the seriousness of the instant offense, his criminal history and his institution misconduct.

(*Id.*).

The instant record is clear that Petitioner received individualized consideration for RRC placement under the Second Chance Act in December 2011. Moreover, home confinement is available for "the shorter of 10 percent of the term of imprisonment of [the] prisoner or 6 months...", 18 U.S.C. §3624(c)(2), not one year as Petitioner claims. Accordingly, Petitioner's Ground I claim is without merit.

       2.     Ground II

Petitioner claims that "[s]pecific laws in Missouri entitle me to a full year of Halfway House/House Arrest and the BOP improperly/unconstitutionally has failed to grant me that required year." (Amended Petition, p. 5).

Respondents persuasively assert that "Petitioner is a federal inmate serving a federal sentence. Accordingly, no State of Missouri statute addressing RRC placement would be applicable to this lawsuit." (Answer, p. 7). Petitioner's Ground Two is without merit.

- 9 -

### 3.     Ground III

Petitioner claims that in 2003, an injury he sustained while he was incarcerated at the United States Penitentiary in Florida resulted in a settlement agreement with the "Unit Manager, Warden, and others properly authorized..." that entitled him to thirteen "months Halfway House/House Arrest. The BOP has now improperly/unlawfully/unconstitutionally reneged on that agreement." (Amended Petition, p. 6). Petitioner further claims he will be able to "document[]" this claim with discovery. (*Id.*). Petitioner does not identify what discovery is necessary to substantiate his claim.

Respondent, citing to the Declaration of Matthew J. Carney, Supervisory Attorney Advisor for the BOP, assigned to the Federal Correctional Institute in Phoenix, Arizona, asserts that "Petitioner's central file was searched and there is no agreement regarding this matter....Additionally, the Federal Bureau of Prisons is not in the practice of negotiating RRC placements in any settlement negotiations." (Answer, p. 6 (*citing* Att. 1 to the Answer)). Further, the District Court, when referring to Petitioner's Ground III, noted in its December 8, 2011 Order that "[a]lthough Petitioner has filed numerous actions in federal court, none of them was resolved in 2003 and only one was resolved in 2004. Petitioner only filed cases in Florida federal court this year [*i.e.,* 2011]." (Doc. 13 at p.2, n.1). In his Reply, Petitioner states that Respondent has responded with "[l]ies". (Reply, p. 3). Other than making the general allegation that Respondent has lied, Petitioner offers no specific information to support this conclusory assertion. Nor does Petitioner specifically address Respondent's assertion that Petitioner's file does not reflect any such agreement. On the instant record, Petitioner has failed to offer more than a conclusory allegation that such a settlement agreement existed and, consequently, his claim should be dismissed. *See Blackledge v. Allison,* 431 U.S. 1621, (1977) ("presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Burgess v. Rios,* 2012 WL 1373470, *1 (E.D. Cal. April 19, 2012) ("Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.").

### III.     CONCLUSION

Grounds I and II of Petitioner's Amended Petition should be denied on the merits and Ground III should be dismissed.

### IV.     RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny and dismiss Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 11) as follows:

1.     Grounds I and II should be denied; and

2.     Ground III should be dismissed.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). If objections are filed, the parties should use the following case number: **CV 11-512-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 11th day of May, 2012.

_____
Héctor C. Estrada
United States Magistrate Judge